IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAMUEL JARVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV254 |
| | ) | |
| MS. JOYNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff Samuel Jarvis, a prisoner of the State of North Carolina. Plaintiff names two former food service workers at Caswell Correctional Center, Ms. Joyner and Donna Pettress, as Defendants. Pending before the Court at the current time are a Dispositive Motion [Doc. #47] filed by Plaintiff and a Summary Judgment Motion [Doc. #54] filed by Defendants. Plaintiff filed a Response [Doc. #57], Affidavit [Doc. #58] and Supplement [Doc. #59] opposing Defendants' Motion. This matter is now before the Court regarding the dispositive motions of the parties. As set out below, the Court concludes that the doctrine of collateral estoppel precludes Plaintiff from relitigating factual issues already resolved by the North Carolina Industrial Commission, and further concludes that Plaintiff has failed to present sufficient evidence that rises to the level of a constitutional violation in any event. Therefore, the Court recommends that Defendant's Motion for Summary Judgment be granted and that Plaintiff's Dispositive Motion be denied.

1

Allegations in the Complaint

The Complaint sets out the following factual allegations in a Statement of Claim. (Complaint [Doc. #1], § V.) Plaintiff's "prison medical jacket" states that he is allergic to beans, onions, and processed turkey. However, on July 19, 2013, his allergy diet card expired. Medical staff told Plaintiff that they had fixed the problem, but Plaintiff alleges that when he went to the dining hall around 8:30 p.m. on July 23, 2013 to receive his Ramadan meal, he asked Defendant Joyner if she had his diet tray, only to be told that his card was still expired and that, if he wanted to eat, he had to eat a regular tray of food. Plaintiff allegedly then asked Defendant Joyner whether or not there was anything to which he was allergic on the regular tray. Plaintiff alleges that Defendant Joyner told him that there was not and that he took the tray, which contained spaghetti. Plaintiff alleges that he began to eat the spaghetti, tasted onions, rose to throw the food away, suffered an allergic seizure, and passed out. He fell, hit his head, and was taken to the hospital. Plaintiff contends that Defendant Joyner's action in giving him food to which he was known to be allergic amounted to "negligence an[d] deliberate indifference" in violation of his federal constitutional rights.

Plaintiff's Affidavits

Plaintiff signed multiple affidavits, which he submitted with his Dispositive Motion [Doc. #47] and his Response to Defendant's Motion for Summary Judgment [Doc. #57, #58, #59]. In the Affidavits, Plaintiff essentially repeats the allegations set out in the Complaint. He also contends that Defendant Joyner wrongfully allowed him to take the regular tray and that "[s]mall onions were found sliced in the meal tray presented to plaintiff." (Dispositive Motion, Exs., Aff. ¶ 3, 5.) He states that he suffered an injury by Defendant's "negligent act,"

that Defendant failed in her "duty of performance to protection and service," and that the "act of negligence could have resulted in irreparable damage." (Id.)  Plaintiff also submitted very brief signed, but unsworn, statements from other inmates which say that Plaintiff got a regular tray after being refused a diet tray or that Plaintiff made statements to that effect and that he then ate some of the food and passed out.

Finally, in the statement submitted with his Response, Plaintiff also claims that earlier in the day on July 23, 2013, he received a diet card showing that his special diet had been renewed and that Defendant Pettress was informed and had confirmed that she planned to leave a note for the next shift that Plaintiff's diet tray should be prepared based on the renewal.

### Defendants' Affidavits

Defendants also provided affidavits, which they attach to their Brief [Doc. #55] supporting their Summary Judgment Motion.  The first affidavit is one submitted by Defendant Joyner.  In that filing, she states that she was a Food Service Manager I at Caswell Correctional Center during the time Plaintiff was housed there. (Defendants' Brief, Ex. 2, ¶ 3.) She states that on July 23, 2013, Ramadan trays were prepared after other supper meals. (Id. ¶ 5.) Allergy and diet trays were prepared and checked before each inmate's name was written on the top cover. (Id.) The trays were then placed on the serving line before inmates entered, with regular trays placed on the left and diet trays placed on the right. (Id.) Inmates receiving diet trays typically entered first to receive the trays with their names on them and then other inmates came to get the regular trays. (Id.) Defendant Joyner states that this procedure had been employed at Caswell for at least four years and at several meals previously attended by Plaintiff. (Id.)

3

Defendant Joyner claims that after all inmates received their trays, she checked the serving line and saw that three trays remained, two regular trays and a diet tray with Plaintiff's name on it. (Id. ¶ 6.) Defendant Joyner then went to her office to complete paperwork. (Id.) She states that she later saw Plaintiff rush into the dining hall. (Id.) She contends that she did not speak to Plaintiff about his tray, did not have a view of the serving line, and did not tell him that he must eat a regular diet tray. (Id.) She adds that, although his diet card was expired at the time, policy required that Plaintiff still receive his allergy diet. (Id.)

Defendant Joyner reports that, a few minutes after she saw Plaintiff enter the dining hall, she heard a commotion in the dining hall and left her office to investigate. (Id. ¶ 7.) At that time, she saw Plaintiff unconscious on the floor near the tray collection window. (Id.) A tray on the floor near Plaintiff was not an allergy tray. (Id.) Defendant Joyner reports that she then checked the serving line and found that Plaintiff's allergy tray was still on the serving line. (Id.) After medical personnel took Plaintiff to the hospital, Defendant Joyner called her supervisor, Defendant Petress, to report the incident. (Id. ¶ 8.)

Defendant Petress also provided an affidavit in support of Defendants' Motion for Summary Judgment. (Defendants' Brief, Ex. 3.) In that filing, she states that she was not present at the facility on the evening of July 23, 2013, so her affidavit adds little other than to confirm the procedures described by Defendant Joyner and the fact that Defendant Joyner called her and reported to her the events as set out in Defendant Joyner's affidavit.

Finally, Defendants submitted the affidavit of George Lundsford, who is an Assistant Superintendent at Caswell Correctional Center. (Defendants' Brief, Ex. 4.) He accessed the electronic records of the facility and produced those records related to the events set out in

the Complaint. Those records add nothing substantive to the parties' statements and demonstrate that Plaintiff claimed from the beginning that Defendant Joyner refused him a diet tray and told him to take a regular tray, but that she denied this and stated that Plaintiff took the regular tray of his own volition while she was in her office.

## Opinion of the North Carolina Industrial Commission

At the same time as the present case was pending, Plaintiff also filed a negligence action in the North Carolina Industrial Commission (hereinafter NCIC) against the North Carolina Department of Public Safety based on the same incident. Defendants then filed a Motion [Doc. #17] seeking to stay the present case while the NCIC action proceeded. Plaintiff filed a Response [Doc. #23] agreeing to the stay, and the Court entered an Order [Doc. #24] staying the case during the NCIC proceedings. Those proceedings later concluded and resulted in a final determination, which Defendants attach as Exhibit 1 to their Summary Judgment Motion.

The determination is set out in an Order and Decision by the full Commission dated December 20, 2017. In that decision, the NCIC noted that the case was before it on appeal from a Decision and Order of Commissioner Danchi filed May 16, 2017. The Commission's Order states that it reviewed the records in the case and the testimony of Plaintiff and had before it two issues, that is:

> "Were [the Department of Public Safety's] named employees negligent?"
> "If so, what if any, damages is Plaintiff entitled to recover?

(Defendants' Brief, Ex. 1, Full Commission Decision, Issues Presented.) The opinion recites Plaintiff's testimony, which is consistent with his claims in this Court, and then lists the records in the case, which included a witness statement from Defendant Joyner that is consistent with her statements in this Court. The NCIC then found that:

5

> Based upon the preponderance of all of the competent evidence of record, the Full Commission finds that Plaintiff has failed to prove that Defendant was negligent in issuing Plaintiff "an improper food tray contrary to his food allergies" on July 23, 2013. Further, Plaintiff has not provided any evidence showing that his "allergic reaction" on July 23, 2013 was caused by any negligence of Defendant. To the contrary, the preponderance of the competent evidence of record shows that Plaintiff voluntarily chose a regular meal tray over his usual special diet tray on July 23, 2013. Plaintiff knew or should have known that the regular meal tray did not likely accommodate his special dietary needs and any allergic reaction he suffered on July 23, 2013 was the result of his own action.

(Defendants' Brief, Ex. 1, Full Commission Decision, Findings of Fact, ¶ 13.) The Commission therefore concluded that Plaintiff had not established negligence by the employees of the Department of Public Safety and that his claim should be denied. (Id., Conclusions of Law, ¶ 5.) Plaintiff attempted to appeal that decision but that appeal was ultimately dismissed because Plaintiff failed to timely file a proposed record on appeal. (Defendants' Brief, Ex. 1, Order of Commissioner Baddour.)

Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then

6

the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

Discussion

In considering Defendants' Summary Judgment Motion, the Court first notes that Defendant Petress is clearly entitled to dismissal from the case. She was not present at Caswell Correctional Facility during the events described in the Complaint and, in fact, is not mentioned in the factual allegations in the Complaint. It appears that Plaintiff named her only based on her position as Defendant Joyner's supervisor. However, there is no vicarious liability under § 1983 and theories of *respondeat superior* or liability predicated solely on a defendant's identity as a supervisor do not form a basis for a claim under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Plaintiff attempts to remedy this deficiency in his Supplement with his statement that Defendant Petress allegedly told him that she would leave a note for the next shift concerning the renewal of Plaintiff's diet card and that his diet tray would be ready. However, this allegation falls far short of supporting a claim that will survive summary judgment. Assuming that Defendant Petress made that statement, Plaintiff produces no proof that she did not, in fact, leave the note as she stated. Further, even if she did not, there is still no way that she could have known that the events as alleged by Plaintiff would transpire. In any event, Plaintiff has produced no evidence that this failure was an intentional or deliberately indifferent violation of his federal constitutional rights, as opposed to, at most,

7

mere negligence, which is not sufficient to state a claim under § 1983. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976). Defendant Petress's Summary Judgment Motion should be granted and Plaintiff's claim against her should be denied.

As for Defendant Joyner, Plaintiff's claims against her have been consistently raised from the time of the incident until now. This includes the proceedings in the NCIC for which the parties' agreed to stay this matter. Based on the outcome of those proceedings, Defendant Joyner seeks summary judgment under the theories of res judicata, issue preclusion, and/or collateral estoppel. (Defendants' Brief at 7.)

> The preclusive effect to be given to prior state court judgments is covered by 28 U.S.C. § 1738, although that section "governs the preclusive effect to be given the judgments and records of state courts, and is not applicable to [ ] unreviewed state administrative factfinding." Univ. of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (emphasis added). Instead, in considering state administrative factfinding, the Court applies "federal common-law rules of preclusion." Id. Specifically, "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). This test effectively includes two prongs: first, the Court considers whether the administrative agency was acting in a judicial capacity and whether the parties had a full and fair opportunity to litigate. Second, if the first prong is satisfied, the Court then considers what preclusive effect the decision would be given in the state's courts.

Millsaps v. Dillingham, No. 1:13CV263, 2016 WL 410011, at *2 (M.D.N.C. Feb. 2, 2016) (unpublished), rec. pending. "In applying this test in the context of claims filed with the North Carolina Industrial Commission, the Court of Appeals for the Fourth Circuit has held that an unappealed decision of an individual commissioner does not satisfy the first prong of this analysis because 'the parties could have no expectation that determinations of fact would be

8

final,' and thus lacked an adequate opportunity to litigate. Id. (quoting Solomon v. Dixon, 904 F.2d 701, 1990 WL 76502, at *2 (4th Cir. May 29, 1990)). However, in the present action, Plaintiff appealed the initial denial by a single commissioner to the Full Commission, which rendered the decision relied upon by Defendants. He also appealed that decision, but then failed to follow up on the appeal, leading to its dismissal. It is clear that in this case the parties had an expectation of finality not present in Solomon. In addition, Plaintiff does not contend that he did not have a full and fair opportunity to litigate before the NCIC. Indeed, it is clear that the Full Commission considered the available record in the case, and that Plaintiff himself was able to testify at the NCIC.[1] It is not clear what more he could have done to litigate the matter. Therefore, the NCIC decision meets the first prong of the analysis, and the Court will consider what, if any, preclusive effect the decision would be given in the state's courts.

In North Carolina, with respect to the doctrine of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, the North Carolina Supreme Court has generally explained:

> Under the doctrine of res judicata or "claim preclusion," a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies. State ex rel. Tucker v. Frinzi, 344 N.C. 411, 413, 474 S.E.2d 127, 128 (1996); Hales v. North Carolina Ins. Guar. Ass'n, 337 N.C. 329, 333, 445 S.E.2d 590, 594 (1994). The doctrine prevents the relitigation of "all matters ... that were or should have been adjudicated in the prior action." McInnis, 318 N.C. at 428, 349 S.E.2d at 556. Under the companion doctrine of collateral estoppel, also known as "estoppel by judgment" or "issue preclusion," the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding. McInnis, 318 N.C. at 433–34, 349 S.E.2d at 560; Bradley v. Hidden Valley Transp., Inc.,

---

[1] Based on prior filings, it appears that Plaintiff also had the opportunity to call proposed witnesses but failed to follow the process to take advantage of that option. (Status Report Ex. [Doc. #26-1].)

9

> 148 N.C.App. 163, 166, 557 S.E.2d 610, 613 (2001), aff'd per curiam, 355 N.C. 485, 562 S.E.2d 422 (2002). Whereas res judicata estops a party or its privy from bringing a subsequent action based on the "same claim" as that litigated in an earlier action, collateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim. Hales, 337 N.C. at 333, 445 S.E.2d at 594. The two doctrines are complementary in that each may apply in situations where the other would not and both advance the twin policy goals of "protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." Bockweg, 333 N.C. at 491, 428 S.E.2d at 161.

Whitacre Partnership v. Biosignia, Inc., 358 N.C. 1, 15-16, 591 S.E. 2d 870, 880 (2004). Further, the North Carolina Court of Appeals has applied the doctrines of res judicata and collateral estoppel with respect to prior determinations of the North Carolina Industrial Commission for matters within its jurisdiction. See Gregory v. Penland, 179 N.C. App. 505, 510, 634 S.E. 2d 625, 629 (2006) ("There is no dispute that the Commission's opinion and award constituted a final judgment entitled to res judicata effect."); Bryant v. Weyerhaeuser Co., 130 N.C. App. 135, 138, 502 S.E.2d 58, 61 ("The doctrine of res judicata precludes relitigation of final orders of the Full Commission...."). Specifically with respect to the doctrine of collateral estoppel,[2] the Court of Appeals for the Fourth Circuit has explained North Carolina law as follows:

> In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action. . . . North Carolina courts have abandoned the final requirement of "mutuality of estoppel" for the defensive use of collateral

---

[2] It does not appear that res judicata, or claim preclusion, would apply here. Plaintiff could not have asserted his § 1983 claims before the Industrial Commission, and his suit in the Industrial Commission was against the State rather than the individual Defendants. See also Millsaps, No. 1:13CV263, 2016 WL 410011 at *2 (M.D. N.C. Feb. 2, 2016); Gregory, 179 N.C. App. at 510-13; 634 S.E. 2d at 629-31. Therefore, the Court has focused on the North Carolina rules for collateral estoppel, or issue preclusion.

estoppel, so long as the party seeking to reopen the issue "had a full and fair opportunity to litigate" the matter in the previous action.

As to the first requirement—that the issue in question was identical to an issue actually litigated and necessary to the judgment—the Supreme Court of North Carolina has held that parties must satisfy four additional criteria:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

State v. Summers, 351 N.C. 620, 528 S.E.2d 17, 20 (2000) (emphasis added) (citing King v. Grindstaff, 284 N.C. 348, 200 S.E.2d 799, 806 (1973)).
. . . .
Moreover, the Supreme Court of North Carolina has relied upon section 27 of the Restatement when defining "collateral estoppel as [that doctrine was] traditionally applied." See Hall, 349 S.E.2d at 557. Section 27 provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

Sartin v. Macik, 535 F.3d 284, 287-88 (4th Cir. 2008).

Thus, to invoke defensive collateral estoppel under North Carolina law, Defendants must show that (1) the issue of law or fact in question was identical to an issue actually litigated and necessary to the judgment in the prior action (under the four-part test set out above); (2) the prior action resulted in a final judgment on the merits, and (3) the party seeking to reopen the issue (Plaintiff here) had a full and fair opportunity to litigate the matter in the prior action. Here, Plaintiff proceeded against an agency of the State before the NCIC based on the alleged actions of its employees, Joyner and Petress, and now seeks to proceed against the employees themselves in the present case. The causes of action raised by Plaintiff in the NCIC and before

11

this Court are certainly different, as the prior action involved a tort claim based on allegations of negligence, while the present case raises claims under § 1983 based on deliberate indifference. Nevertheless, this does not prevent application of collateral estoppel because, although the causes of action differ, the claims still turn on common issues of disputed fact which were necessarily decided by the NCIC and which preclude recovery in this Court. Specifically, Plaintiff's statements from the very beginning are that Defendant Joyner denied him a diet tray, told him that if he wanted to eat he had to take a regular tray, and wrongly assured him that the regular tray still met his dietary restrictions. Defendant Joyner's statements from the very beginning have been that she prepared a diet tray for Plaintiff with his name on it, he arrived late to eat and did not speak with her, and he took a regular tray rather than the diet tray. The NCIC faced those same disputed issues of fact that now exist in this Court and it decided them by finding that "the preponderance of the competent evidence of record shows that Plaintiff voluntarily chose a regular meal tray over his usual special diet tray on July 23, 2013. Plaintiff knew or should have known that the regular meal tray did not likely accommodate his special dietary needs and any allergic reaction he suffered on July 23, 2013 was the result of his own action." (Defendants' Brief, Ex. 1, Full Commission Decision, Findings of Fact, ¶ 13.) Thus, the Commission concluded that no negligence occurred on the part of Defendants. Plaintiff now seeks to relitigate these factual issues by continuing to claim that Defendant Joyner offered him no diet tray, required him to take a regular tray if he wanted to eat, and misinformed him as to its contents. This is exactly the type of issue relitigation that the doctrine of collateral estoppel seeks to prevent. As another judge of this Court stated in a similar instance:

12

> Plaintiff chose to first litigate his negligence claim, with its far less rigorous state of mind standard than the instant deliberate indifference claim requires. Plaintiff cannot be allowed a second opportunity to prove his claim. The final judgment on the merits in Plaintiff's state claim arising out of the termination of his therapeutic diet while in the custody of DOC is entitled to preclusive effect. Plaintiff, therefore, cannot maintain a claim under § 1983 alleging that Defendant Cash violated his constitutional rights based on the same facts presented in support of his claim brought under the North Carolina Tort Claims Act.

Murray v. Cash, No. 1:08CV280, 2013 WL 3543579, at *5 (M.D.N.C. July 11, 2013) (unpublished), report and rec. adopted, No. 1:08CV280, Doc. #209, 210, (M.D.N.C. Jan. 22, 2014) (unpublished).  Likewise, the factual findings of the NCIC regarding Plaintiff's case before that body collaterally estop Plaintiff from challenging those facts in the instant action and are fatal to his claims under § 1983.  Therefore, Defendants' Motion for Summary Judgment should be granted.

Moreover, even if the findings of the NCIC could be challenged or did not bar Plaintiff's claims in this Court, those claims would still fail.  In order to prevail on that claim, Plaintiff would have to demonstrate that Defendant Joyner was:

> deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D.Va. 1995). To establish a violation of the right to adequate medical care, a plaintiff must show (1) a medical need that objectively is sufficiently serious to warrant constitutional protection, and (2) behavior on the part of prison officials that amounted to deliberate indifference to that need. To satisfy the second prong, a showing of mere negligence or even malpractice is not sufficient; instead, the plaintiff must show that the defendant was deliberately indifferent "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Braxton v. Director of Health Services, No. 1:17cv340, 2018 WL 6072003, at *5 (E.D. Va. Nov. 19, 2018) (unpublished) (addressing an alleged failure to accommodate a food allergy).  Here, Plaintiff cannot demonstrate deliberate indifference on the part of Defendant Joyner

13

because he has produced no evidence that she knew that the spaghetti on the regular tray contained onions. Taking Plaintiff's allegations as true, she stated that it did not, but he has not shown that this statement was knowingly false or that she had any reason to make a intentionally false statement to him regarding the contents of the spaghetti.[3] Instead, such a statement would be consistent with nothing greater than negligence, which is insufficient to sustain a claim under § 1983. Further, to any extent that Plaintiff may argue that onions are generally contained in spaghetti sauce, this fact would also preclude his claim as he would have known this as well at the time he ate the spaghetti. As the NCIC stated, "Plaintiff knew or should have known that the regular meal tray did not likely accommodate his special dietary needs and any allergic reaction he suffered on July 23, 2013 was the result of his own action." (Defendants' Brief, Ex. 1, Full Commission Decision, Findings of Fact, ¶ 13.) Indeed, in a statement attached to an affidavit submitted with prior filings, Plaintiff admitted that after he took the tray, he saw that it contained pinto beans, so it should have been apparent to him that the tray potentially contained items that were not consistent with his dietary needs. (Affidavit [Doc. #18-2].) Additionally, Defendant Joyner did not force Plaintiff to take the regular tray or to eat the spaghetti, because he had other options available. Plaintiff could have chosen to forgo dinner altogether. Although not a comfortable option, missing one meal would have insured his safety and would not have amounted to a constitutional violation. See Peterson v. Jackson, No. 5:15-CT-3308-FL, 2016 WL 1733452, at *2 (E.D.N.C. April 29, 2016) (unpublished) (citing cases for the proposition that a single missed meal does not equal

---

[3] In a statement attached to an affidavit submitted with an earlier filing, Plaintiff states that he asked Defendant Joyner whether there were onions on the tray, and she told Plaintiff "no, not to her knowledge." (Affidavit [Doc. #18-2].)

14

a constitutional violation sufficient to support a § 1983 claim). Even more easily, Plaintiff could have taken the regular tray and eaten items from it to which he clearly was not allergic. In addition to spaghetti and pinto beans (to which Plaintiff is also allergic), the tray contained peas and carrots, carrot sticks, cake, bread, and an apple. (Defendants' Brief, Ex. 3, ¶ 9; Affidavit [Doc. #18-2] (statement by Plaintiff that the tray also included peas and bread).) Plaintiff could simply have eaten the remaining items. However, he chose to eat an item that he knew to be a risk. If he erroneously believed the item to be safe, he cannot now claim that Defendant Joyner was deliberately indifferent to his safety for making the same assessment. In fact, Plaintiff claims in his Affidavits that small sliced onions were found in his tray. He cannot show that Defendant Joyner's actions caused his injury when he had viable options readily available to assure his own safety and was in the best position to see the onions himself. Therefore, Defendants' Motion for Summary Judgment should be granted for these additional reasons.

Finally, the Court notes that Plaintiff also filed a "Dispositive Motion," but only provides certain exhibits and portions of the record. He did not actually brief his claims or any dispositive issues or specifically seek any relief or any action by the Court. This is not sufficient for him to be entitled to summary judgment or any other dispositive ruling. Further, the Court has considered the information submitted with the Dispositive Motion in addressing Defendants' Summary Judgment Motion, and has concluded that Defendants' Summary Judgment Motion should be granted for all of the reasons set out above. Therefore, Plaintiff's Dispositive Motion should be denied.

15

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #54] be granted, that Plaintiff's Dispositive Motion [Doc. #47] be denied, and that judgment be entered dismissing this action.

This, the 27th day of February, 2020.

                                                          /s/ Joi Elizabeth Peake
                                                  United States Magistrate Judge